UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:19-CV-00005-GNS-HBB

JESSE TRENT, et al.                                                          PLAINTIFFS

v.

CHRIS TRULOCK, et al.                                                        DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss (DN 21).  This matter is
ripe for adjudication.  For the reasons discussed below, Defendants' motion is **GRANTED IN
PART** and **DENIED IN PART**.

## I.        STATEMENT OF FACTS

On December 11, 2017, Plaintiff Jesse Trent ("Trent") was driving an automobile and was
signaled to pull over by Defendant Chris Trulock ("Trulock"), an officer with the Horse Cave
Police Department ("HCPD").   (Notice Removal Ex. 1, ¶ 15, DN 1-2 [hereinafter Compl.]).
Fearing that Trulock would plant drugs in his car, Trent refused to stop and fled to a neighboring
jurisdiction to turn in himself in.  (Compl. ¶¶ 15-16).   After surrendering, Trent requested law
enforcement search his car before Trulock could, but the officers refused and transferred Trent into
Trulock's custody.  (Compl. ¶¶ 17-18).   Trulock brought Trent to the HCPD and booked him on
fleeing and evading charges.  (Compl. ¶ 18).   Trulock returned to search Trent's car and allegedly
planted meth.  (Compl. ¶¶ 20-21).   Trulock then filed charges against Trent for possession of
methamphetamine and other related charges.  (Compl. ¶ 22).

The next day, Trulock followed Plaintiff Stephanie Grider ("Grider") to the residence she
was leasing from Trent.  (Compl. ¶ 26).   Trulock pulled Grider over as she arrived home and

conducted a field sobriety test for suspected DUI.  (Compl. ¶¶ 27-28).  Trulock found a small amount of marijuana and allegedly planted methamphetamine in Grider's car as well.  (Compl. ¶¶ 27-30).  Trulock then charged her with possession of methamphetamine.  (Compl. ¶ 30).

Later that day, Trulock acquired a warrant to search Grider's residence.  (Compl. ¶ 33).  Plaintiffs allege Trulock planted more meth in a gun safe that Grider kept at the residence.  (Compl. ¶ 35).  Defendants Larry Dale Martin, II ("Martin") and Sean Henry ("Henry"), who were officers with the HCPD, were allegedly aware of Trulock's conduct and accompanied him as he took Grider home, brought out the safe, opened it in front of her, and pretended to find the meth and guns inside.  (Compl. ¶¶ 34-39).  The officers then returned Grider to the HCPD and threatened her with more charges in order to force her to admit the methamphetamine and firearms found in the safe belonged to Trent.  (Compl. ¶¶ 41-43).  Grider initially denied that either belonged to Trent, but eventually "relented" in order to be released.  (Compl. ¶¶ 44-47).  The officers then brought charges against Grider for operating a motor vehicle under the influence and possession of methamphetamine, and additional charges against Trent including drug trafficking and being a felon in possession of a handgun.  (Compl. ¶¶ 49, 52).  While in jail, Trent had a phone conversation with Grider, which was recorded and during which the officers claimed Trent made threatening statements.  (Compl. ¶¶ 54-56).  The phone conversation prompted the officers to charge Trent with witness tampering.  (Compl. ¶¶ 54-56).  On April 20, 2018, all charges against both Plaintiffs were dismissed.  (Compl. ¶¶ 25, 51, 57).

On December 28, 2018, Trent and Grider  brought this action in Hart Circuit Court against Defendants Trulock; Martin; Henry; Randall Curry ("Curry"), Mayor of Horse Cave; the HCPD; and Horse Cave, Kentucky, asserting state law claims for abuse of process, malicious prosecution, and negligence, and a federal claim for a violation of 42 U.S.C. § 1983.  (Compl. ¶¶ 65-99).

2

Defendants removed the action pursuant to 28 U.S.C. §§ 1331, 1367, 1441 1446.  (Notice Removal 1-2, DN 1).  Trulock and Henry ("Defendants") have moved to dismiss Plaintiffs' claims in part.  (Defs.' Mot. Dismiss, DN 21).  Fully briefed on the matter, the pending motion is ripe for decision.

## II.   <u>STANDARD OF REVIEW</u>

Motions pursuant to Fed. R. Civ. P. 12(b)(6) require the Court "to construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief."  *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).

## III.   <u>DISCUSSION</u>

### A.   <u>Official Capacity Claims</u>

Plaintiffs sued Defendants in their individual and official capacities.  (Compl. ¶ 10).  "Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 n.55 (1978)).  Thus, Plaintiffs' official-capacity claims are against Defendants' employers, HCPD and Horse Cave.  Plaintiffs concede this point.  (Pls.' Resp. Defs.' Mot. Dismiss 3, DN 25).  Accordingly, Plaintiffs' claims against Trulock and Henry in their official capacities are dismissed.

### B.   <u>Negligence</u>

Plaintiffs also concede their negligence claims are time barred by the one-year statute of limitations under Kentucky law.  (Pls.' Resp. Defs.' Mot. Dismiss 4).  These claims will be dismissed.

C.    **Malicious Prosecution**

Plaintiffs brought malicious prosecution claims under state law and pursuant to 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendment.  (Compl. ¶¶ 75-89).  Defendants argue Plaintiffs' malicious prosecution claims pursuant to Section 1983 must be dismissed because Section 1983 does not create substantive rights, or in the alternative, that the Fourteenth Amendment does not provide a basis for Plaintiffs' malicious prosecution claim.  (Defs.' Mem. Supp. Mot. Dismiss 5-7, DN 21-1 [hereinafter Defs.' Mot Dismiss]).  Plaintiffs concede the Fourteenth Amendment does not provide a basis for a malicious prosecution claim but contend the Fourteenth Amendment does support a fabrication-of-evidence claim.  (Pls.' Resp. Defs.' Mot. Dismiss 4).  Plaintiffs acknowledge, however, that a claim for fabrication-of-evidence would fail because charges against Plaintiffs were dropped and never brought before a jury.  (Pls.' Resp. Defs.' Mot. Dismiss 4).  Accordingly, the Court dismisses Plaintiffs' malicious prosecution claims to the extent they are based on the Fourteenth Amendment and the fabrication-of-evidence claims. Defendants do not seek dismissal of Plaintiffs' malicious prosecution claims under state law or the Fourth Amendment, however, which claims may proceed.

D.    **Abuse of Process**

Plaintiffs assert abuse of process claims against Defendants for the allegedly false charges against them.  (Compl. ¶¶ 65-74).  Defendants argue Plaintiffs fail to state a claim and that, regardless, both claims are barred by the statute of limitations.  (Defs.' Mot. Dismiss 7-10). Pursuant to KRS 413.140(1)(a), Kentucky has a one-year statute of limitations for abuse of process claims. *Maqablh v. Heinz*, No. 3:16-CV-289-JHM, 2016 WL 7192124, at *8 (W.D. Ky. Dec. 12, 2016).  Such claims are "generally held to accrue . . . from the termination of the acts which constitute the abuse complained of, and not from the completion of the action in which the process

issued." *Dickerson v. City of Hickman*, No. 5:08-CV-P53-R, 2010 WL 816684, at *5 (W.D. Ky. Mar. 4, 2010) (citation omitted); *see also Maqablh*, 2016 WL 7192124, at *8.  Plaintiffs present, for the first time in their response, a copy of their state criminal dockets and argue that Defendants' false testimony and fabricated evidence "caused" Plaintiffs to be indicted for felony charges on January 2, 2018, within one year of filing the complaint on December 28, 2018.  (Pls.' Defs.' Mot. Dismiss 4-5).  Although Defendants arrested and charged Plaintiffs on December 11 and 12, 2017, more than one year before the instant action, Plaintiffs contend "there are multiple actions that occurred which would be the basis for the abuse of process claim."  (Pls.' Resp. Defs.' Mot. Dismiss 5).  Defendants note regarding the indictment that "Plaintiffs are referring to the very same actions by Defendants," which occurred in December 2017.  (Defs.' Reply Mot. Dismiss 4, DN 26).

Abuse of process is "the irregular or wrongful employment of a judicial proceeding . . . ." *Stoll Oil Refin. Co. v. Pierce*, 337 S.W.2d 263, 266 (Ky. 1960) (citation omitted).  To properly plead an abuse of process claim, a plaintiff must allege two elements:  "(1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Garcia v. Whitaker*, 400 S.W.3d 270, 276 (Ky. 2013) (citations omitted).  As to the second element, a plaintiff must plead "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process," but there is no abuse of process claim "where the defendant has done nothing more than carry out the process to its authorized conclusion *even though with bad intentions*." *Simpson v. Laytart*, 962 S.W.2d 392, 394-95 (Ky. 1998) (emphasis added) (citation omitted).  In *Simpson*, the Kentucky Supreme Court described the type of conduct that satisfies the second element:

> Such conduct 'usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property on

[sic] the payment of money, by the use of the process as a threat or a club. There
is, in other words, a form of extortion, and it is what is done in the course of
negotiation, rather than the issuance or any formal use of the process itself, which
constitutes the tort.'

*Id.* at 394 (citing William L. Prosser, *Handbook of the Law of Torts*, Section 121 (4th ed. 1971)).

Generally, "obtaining an indictment alone, even with an ulterior purpose, is not abuse of process. There must be some act or use of the process to secure a collateral advantage outside the criminal proceeding." *Sprint Commc'ns Co., L.P. v. Leggett*, 307 S.W.3d 109, 114 (Ky. 2010). Where a plaintiff merely pleads officers lied in their written police reports and fabricated testimony, without an allegation that the officer attempted to use the charges against the plaintiff as a form of coercion to induce him to act in a manner "not proper in the regular conduct of the proceeding[,]" the claim fails. *Williams v. Sandel,* No. CV 08-04-DLB, 2010 WL 11538241, at *3 (E.D. Ky. June 9, 2010), *rev'd on other grounds*, 433 F. App'x 353 (6th Cir. 2011) (citing *Mullins v. Richardson*, 705 S.W.2d 951, 952 (Ky. App. 1986)). Rather, "[i]n the typical abuse of process claim, the plaintiff satisfied the willful act element by showing that the defendant directly bargained with him, using the wrongful process as leverage." *Sanders v. City of Pembroke,* No. 5:19-CV-23-TBR, 2020 WL 4572360, at *16 (W.D. Ky. Aug. 7, 2020); *see also Flynn v. Songer,* 399 S.W.2d 491, 494 (Ky. 1966) (upholding a claim where defendants used arrest warrant to convince plaintiff to release wage garnishment); *Isham v. ABF Freight Sys., Inc.*, Nos. 2004-CA-001349-MR, 2005-CA-000409-MR, 2006 WL 2641398, at *10 (Ky. App. Sept. 15, 2006) (upholding a claim where employer used criminal charge as leverage to obtain employee's resignation).

Plaintiffs contend Defendants harbored an ulterior motive of punishing them and that Defendants willfully instituted criminal charges based upon false information to prevent Plaintiffs from challenging their conduct. (Compl. ¶¶ 69, 72). Trent fails to plead that Defendants

committed an improper act, however, either on December 11, 2017, or January 2, 2018. Trent claims that Defendants arrested him for fleeing and evading, and then allegedly planted meth in his car and charged him with possession.  Trent does not allege that Defendants acted to obtain a collateral advantage through these charges or the indictment, but merely that Defendants were attempting to punish or retaliate against him.  *Simpson*, 962 S.W.2d at 394 ("[T]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion even if we assume *arguendo* bad intentions."  (citing Prosser, *supra*, § 121); *see also Hadden v. Wathen*, No. 1:16-CV-00140-GNS-HBB, 2018 WL 4222882, at *17 (W.D. Ky. Sept. 5, 2018). Absent an allegation that Defendants sought to induce some collateral advantage from the charges against Trent, his abuse of process claim fails.

Similarly, even though "abuse of process does not require that the willful, coercive act occur *subsequent* to the issuance of the process" Plaintiffs have not pled that Defendants pursued the indictment for some collateral leverage a month after bringing the initial charges and causing Grider to give false testimony.  *Leggett*, 307 S.W.3d at 118 (emphasis added).  Grider does, however, alleges an "extortion-like negotiation in which officers used the charges as leverage against [her]." *Leath v. Webb*, 323 F. Supp. 3d 882, 897 (E.D. Ky. 2018) (citation omitted).  Grider claims Defendants attempted to coerce her into lying about the ownership of incriminating evidence, an act outside the course of a criminal proceeding, for the ulterior purpose of covering up their prior unlawful conduct with Trent.  Although Defendants never dangled an offer of freedom—in fact they went ahead and charged her with more crimes—"it makes no difference whether they did or did not intend to withdraw the criminal charge, provisionally or otherwise. The gist of the tort is that they attempted to use it as a means to secure a collateral advantage." *Flynn*, 399 S.W.2d at 495.

7

Defendants' conduct, as alleged by Grider, occurred on December 12, 2017, over a year before the filing of the Complaint.  (Compl. ¶¶ 26-42).  Although Plaintiffs claim Defendants arrested and brought false charges against Grider to coerce false testimony, the Complaint does not allege Defendants acquired the indictment on January 2, 2018, for the same purpose.  In *Stanford v. Saling*, No. 2017-CA-000295-MR & 2017-CA-001668-MR, 2020 WL 2298441 (Ky. App. May 8, 2020), the plaintiff alleged the defendants initiated the criminal process more than a year before the complaint.  *Id.* at *3.  In response to the defendant's motion for summary judgment, the plaintiff referenced for the first time defendant's attendance at a subsequent criminal proceeding within one year of the complaint.  *Id*.  The circuit court did not allow the plaintiff to amend the complaint to include these facts but held though the defendant "may have continued to actively (and even egregiously) participate in the criminal proceedings, the underlying tort was comprised of his single act of filing an allegedly false criminal complaint."  *Id.*  The Kentucky Court of Appeals affirmed the circuit court's order denying plaintiff's claim as time-barred and held the defendants later conduct "may be simple evidence of an ulterior purpose for initiating the criminal process. . . ."  *Id.* at *4.  Grider does not contend Defendants actually presented any testimony to the grand jury, but rather that testimony and evidence was presented to the grand jury, which then "caused" it to deliver an indictment.  Accordingly, as Defendants charged and allegedly extorted Grider on December 12, 2017, over a year before the action here, Grider's claim for abuse of process is time-barred.

## IV.  CONCLUSION

For the reasons discussed above, **IT IS HEREBY ORDERED** Defendants' Motion to Dismiss (DN 21) is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiffs' federal claims for malicious prosecutions to the extent they are based on the Fourteenth Amendment and for

fabrication of evidence, and Plaintiffs' state law claims for negligence and abuse of process are **DISMISSED**.  In addition, Plaintiffs' claims against Defendants Chris Trulock and Sean Henry in their official capacities are **DISMISSED**.

Greg N. Stivers, Chief Judge
United States District Court

March 4, 2021

cc:      counsel of record